FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 15, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MATTHEW M.,[1]<br><br>             Plaintiff,<br><br>  vs.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | No. 2:20-cv-00384-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 19, 20 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19, 20. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 19, and grants Defendant's motion, ECF No. 20.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1

**JURISDICTION**

2

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

3

**STANDARD OF REVIEW**

4

A district court's review of a final decision of the Commissioner of Social

5 Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

6 limited; the Commissioner's decision will be disturbed "only if it is not supported

7 by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

8 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

9 reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159

10 (quotation and citation omitted). Stated differently, substantial evidence equates to

11 "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

12 citation omitted). In determining whether the standard has been satisfied, a

13 reviewing court must consider the entire record as a whole rather than searching

14 for supporting evidence in isolation. *Id.*

15

In reviewing a denial of benefits, a district court may not substitute its

16 judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

17 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

18 rational interpretation, [the court] must uphold the ALJ's findings if they are

19 supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

20 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

ORDER - 2

404.1502(a), 416.920(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

ORDER - 3

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On May 7, 2018 Plaintiff applied for Title II disability insurance benefits

alleging a disability onset date of September 30, 2016.  Tr. 15, 80, 165-66.  The

application was denied initially and on reconsideration.  Tr. 101-03, 105-07.

Plaintiff appeared before an administrative law judge (ALJ) on January 30, 2020.

Tr. 32-65.  On February 21, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through December 31, 2021, has not

engaged in substantial gainful activity since September 30, 2016, the alleged onset

date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe

impairments: degenerative [joint] disease of the knees, edema, extreme morbid

obesity, hypogonadism (failure of the gonads to function properly), and a social

anxiety disorder.  Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

ORDER - 6

impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [H]e can perform postural activities occasionally but he can never kneel, crawl, or climb ladders, ropes, or scaffolds, and he should avoid concentrated exposure to extreme temperatures, humidity, vibrations, and respiratory irritants, and all exposure to hazards (such as unprotected heights and moving machinery). He is able to understand, remember, and carry out simple, routine and semi-skilled tasks and is able to maintain concentration, persistence, and pace for two hour intervals between regularly scheduled breaks in a predictable environment with seldom change, and no fast paced or production rate of pace work, and only occasional and superficial interaction with the public.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 25.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as garment sorter, warehouse checker, and mail clerk.  Tr. 26.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of September 30, 2016, through the date of the decision.  Tr. 27.

On August 26, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

1

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability insurance benefits under Title II of the Social Security Act.  Plaintiff

raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 19 at 6, 13.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by failing to rely on reasons that were clear

and convincing in discrediting his symptom claims.  ECF No. 16 at 6-13.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

ORDER - 8

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

5    omitted). General findings are insufficient; rather, the ALJ must identify what

6    symptom claims are being discounted and what evidence undermines these claims.

7    *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

8    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

9    explain why it discounted claimant's symptom claims)). "The clear and

10   convincing [evidence] standard is the most demanding required in Social Security

11   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

12   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

13   Factors to be considered in evaluating the intensity, persistence, and limiting

14   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

15   duration, frequency, and intensity of pain or other symptoms; 3) factors that

16   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

17   side effects of any medication an individual takes or has taken to alleviate pain or

18   other symptoms; 5) treatment, other than medication, an individual receives or has

19   received for relief of pain or other symptoms; 6) any measures other than treatment

20   an individual uses or has used to relieve pain or other symptoms; and 7) any other

1  factors concerning an individual's functional limitations and restrictions due to

2  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

3  404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

4  individual's record," "to determine how symptoms limit ability to perform work-

5  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

6      The ALJ found that Plaintiff's medically determinable impairments could

7  reasonably be expected to cause some of the alleged symptoms but that Plaintiff's

8  statements concerning the intensity, persistence, and limiting effects of his

9  symptoms were not entirely consistent with the medical evidence and other

10  evidence in the record.  Tr. 20, 22.[2]

11      *1. Inconsistent Objective Medical Evidence*

12      The ALJ found the medical record does not support Plaintiff's symptom

13  claims.  Tr. 20-22.  An ALJ may not discredit a claimant's symptom testimony and

14  deny benefits solely because the degree of the symptoms alleged is not supported

15  by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

16  2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,

17  885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

_____

19  [2] Pages seven and eight of the ALJ's decision are out of order in the Administrative

20  Record.  Page eight of the decision is first, at Tr. 21, and page seven is on Tr. 22.

ORDER - 10

2005).  However, the objective medical evidence is a relevant factor, along with

the medical source's information about the claimant's pain or other symptoms, in

determining the severity of a claimant's symptoms and their disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Here, the ALJ found that

other than obesity, Plaintiff had minimal physical conditions.  Tr. 22.  The ALJ

noted records showed Plaintiff weighed over 600 pounds by December 2017.  Tr.

22.  The ALJ indicated he considered SSR 19-2p and the effect of obesity on co-

existing impairments; he concluded "Plaintiff's extreme obesity obviously reduces

his exertional limitations," but there was no evidence supporting disabling

limitations.  Tr. 21.  Although the ALJ acknowledged the records show significant

weight gain, the ALJ noted that in February 2018 Plaintiff was losing weight with

medication, phentermine, and was down to 508 pounds by August 2018.  Tr. 22;

*see* Tr. 288, 293, 298, 300, 499.  The ALJ also found that obesity was a

longstanding condition and that Plaintiff had worked at SGA levels with such

condition through 2015.  Tr. 22.

          In terms of knee pain, the ALJ noted an MRI in 2016 showed potential

undersurface tear of the posterior horn of the medial meniscus, but also that there

was no evidence of significant intervening treatment and records from 2018

showed Plaintiff reported steroid injections provided noticeable relief.  Tr. 22

(citing Tr. 320-21, 356-57, 364).  While Plaintiff reported his knees were very sore

ORDER - 11

1  in May 2018, the ALJ noted he also reported he had to do a lot of moving at that

2  time following his grandmother's death.  Tr. 22 (citing Tr. 365).  The ALJ also

3  noted that although Plaintiff reported bilateral knee osteoarthritis in 2018, there is

4  no imaging of his left knee.  Tr. 22.  An x-ray of his right knee was normal in

5  August 2016.  Tr. 358.  Treatment has been limited and while records show reports

6  of persistent knee pain, the ALJ also noted clinical examinations were generally

7  unremarkable.  Tr. 22; *see, e.g.,* Tr. 278 (August 2016: very obese, normal gait, no

8  limp or edema); Tr. 282 (July 2016: chronic pain of right knee, some difficulty

9  getting up from a chair secondary to knee pain and swelling, will get x-ray and go

10 to physical therapy); Tr. 305 (November 2017: persistent knee pain, not exercising

11 because of discomfort); Tr. 366 (April 2018: physical therapy assessment noted

12 severe obesity with bilateral knee osteoarthritis, limited range of motion in hip and

13 strength in right knee); Tr. 476 (May 2018: reports pain in right and left knee, will

14 start physical therapy in water); Tr. 478 (May 2018: bilateral knee injections for

15 osteoarthritis, physical exam normal); Tr. 515 (September 2018: follow up bilateral

16 knee injections, reports left knee hardly any pain, right knee bothering him. No

17 edema noted on physical exam).

18     The ALJ acknowledged Plaintiff was diagnosed with obstructive sleep apnea

19 in March 2017, but also that records show this is being adequately treated, causing

20 no functional limitations.  Tr. 22.  A sleep study in March 2017 showed

"obstructive sleep apnea of a very severe degree" and although CPAP therapy was

noted not adequate due to persistent hypoxia, nasal BiPAP therapy was beneficial

with "significant improvement in sleep-disordered breathing including

hypoxemia." Tr. 380. In May 2017, his endocrinologist noted hypogonadism with

"broad differential including … obstructive sleep apnea (for which the patient just

started treatment)." Tr. 289. He was noted to be sleeping better with BiPAP,

although he had not yet experienced significant improvement with fatigue. Tr.

296. The ALJ noted Plaintiff did not raise sleep apnea as an issue during his

testimony. Tr. 22.

      While records show impairments and some reports of increased symptoms,

the ALJ's finding that the medical record does not support Plaintiff's report of

severe restrictions is reasonable. While a different interpretation of the medical

evidence could be made, the ALJ's interpretation that the medical evidence was

inconsistent with Plaintiff's complaints of disabling symptoms is rational and

supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359

F.3d 1190, 1198 (9th Cir. 2004) (recognizing that when evidence in the record is

subject to more than one rational interpretation, the court defers to the ALJ's

finding). Lack of support in the medical record, coupled with the additional

supported reason offered by the ALJ as discussed below, is a clear and convincing

reason to give less weight to Plaintiff's subjective symptoms complaints.

ORDER - 13

1        *2. Inconsistent report of weight gain*

2        The ALJ found that Plaintiff's "complaints also appear to misrepresent the

3   record, specifically that his alleged weight gain/increase had occurred in just the

4   last two years."  Tr. 22.  In evaluating a claimant's symptom claims, an ALJ may

5   consider the consistency of an individual's own statements made in connection

6   with the disability-review process with any other existing statements or conduct

7   under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)

8   Here, as Plaintiff points out, there is no evidence he alleged the weight gain had

9   occurred only in the past two years.  ECF No. 19 at 8.  Records show he

10  "admit[ted] 100-200 [pound] weight gain in last 2 years" at a sleep study in May

11  2017 and reported "unintentional weight gain over the past 2-3 years" at an

12  endocrinology appointment in May 2017; Plaintiff weighed 614 pounds at that

13  appointment, with a BMI of 67.56 (he is 6'8" tall).  Tr. 296.  The ALJ

14  acknowledged Plaintiff was "400 pounds by December 2015 and over 600 pounds

15  in August 2017," and records show his providers were concerned about his

16  significant unintentional weight gain during this time.  Tr. 22, 296, 383.  Dr. Alto,

17  a reviewing doctor the ALJ found persuasive, also indicated Plaintiff had a "300

18  pound weight gain in 5 years."  Tr. 91.  Records support Plaintiff's significant

19  abnormal weight gain during the period at issue and there is no evidence he

20  misrepresented the record concerning his weight gain over a specific period of

ORDER - 14

1    time.  This was therefore not a clear and convincing reason to discount Plaintiff's

2    symptom reports.

3         While the ALJ erred by discrediting Plaintiff's symptoms complaints based

4    on his reports of rapid weight gain, the error is inconsequential to the ultimate

5    disability determination and is harmless, as the ALJ provided other specific, clear,

6    and convincing reasons to discount Plaintiff's symptom claims.  *See Carmickle v.*

7    *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674

8    F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless

9    where the ALJ provided one or more invalid reasons for disbelieving a claimant's

10   testimony, but also provided valid reasons that were supported by the record.");

11   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)

12   (holding that any error the ALJ committed in asserting one impermissible reason

13   for claimant's lack of credibility did not negate the validity of the ALJ's ultimate

14   conclusion that the claimant's testimony was not credible).

15        *3.  Improvement/Controlled with Treatment*

16        The ALJ discounted Plaintiff's symptom claims of disabling anxiety because

17   his anxiety was controlled with treatment.  Tr. 22-23.  The effectiveness of

18   medication and treatment is a relevant factor in determining the severity of a

19   claimant's symptoms.  20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc.*

20   *Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (recognizing that conditions

ORDER - 15

1  effectively controlled with medication are not disabling for purposes of

2  determining eligibility for benefits) (internal citations omitted); *see also*

3  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A favorable response

4  to treatment can undermine a claimant's complaints of debilitating pain or other

5  severe limitations.).

6        Here, the ALJ cited treatment records showing Plaintiff's anxiety was

7  controlled with medication.  For example, the ALJ found that in 2018 Plaintiff

8  reported improvement in his anxiety and that mental status exams throughout 2017

9  and 2018 were within normal limits.  Tr. 22, 474, 520.  The ALJ noted that in

10 August 2018 Plaintiff reported he had more difficulty with symptoms after his

11 mother died, but he also reported "he was now back on track."  Tr. 22, 499.

12 Records also show that in August 2018 his primary care provider noted he was

13 "suffering from situation anxiety/panic" due to the death of his grandmother in

14 April and his mother in July; he increased Plaintiff's clonazepam at that time.  Tr.

15 480.  The ALJ noted at a psychiatric evaluation in October 2018 Plaintiff reported

16 his symptoms had worsened after his mother's death but had otherwise been stable

17 and under control with medication.  Tr. 21, 510.  In August 2018, he reported his

18 anxiety had improved, his provider noted his hypertension improved along with his

19 anxiety, that he was "feeling better," and that clonazepam had "really helped."  Tr.

20 520.  In February 2019, his primary care provider reported his anxiety was stable

ORDER - 16

with medication.  Tr. 570.  The ALJ also explained that Dr. Toews, the

psychological expert at the hearing, testified that mental status observations were

generally unremarkable and within normal limits, he had minimal psychological

symptoms with temporary increase in symptoms due to bereavement in 2018 and

unremarkable/normal limitations thereafter, and that based on his review of the

record Plaintiff was stable.  Tr. 23-24.

The ALJ reasonably interpreted the evidence and permissibly discounted

Plaintiff's subjective complaints concerning anxiety based on his history of

effective control with medication.

### 4. *Conservative Treatment*

The ALJ discounted Plaintiff's symptom claims due to his "limited need for

or pursuit of any significant treatment for his alleged impairments."  Tr. 22.

Evidence of conservative treatment is sufficient to discount a claimant's testimony

regarding the severity of an impairment.  *See Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008) (holding the ALJ permissibly inferred that the claimant's

"pain was not as all-disabling as he reported in light of the fact that he did not seek

an aggressive treatment program" and "responded favorably to conservative

treatment including physical therapy and the use of anti-inflammatory medication,

a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").  The

ALJ also notes, however, that Plaintiff testified he was "supposed to be losing

ORDER - 17

weight in preparation for gastric bypass surgery but was essentially at a standstill."

Tr. 22. The ALJ discounts Plaintiff's testimony because he has not had significant

treatment. Tr. 22. Review of the medical record, however, shows bariatric surgery

was recommended but Plaintiff was too obese to undergo surgery during the period

at issue. In 2017, for example, his endocrinologist advised him that "bariatric

surgery offers him the best choice and chance of having an adequate life. I will

start the process to work towards that outcome." Tr. 306. Plaintiff was put on

medication to assist with weight loss at that time. *Id.* In February 2018, his

endocrinologist noted Plaintiff was doing well on phentermine and "clearly losing

weight well on the drug," but also that this medication was "only a gateway to get

him to bariatric surg[ery]." Tr. 298, 301. He had lost 25 pounds at that time and

was down to 550 pounds with a BMI of 60.42. Tr. 298, 300. Records from an

orthopedic consult for knee pain in 2016, when his weight was just over 400

pounds, show that even then he was considered a "poor surgical candidate due to

weight" and other medical issues, and that he "would need weight loss and cardiac

clearance prior to any surgery." Tr. 321. Because surgery was neither

recommended or sanctioned by Plaintiff's doctors due to his weight during the

period at issue, the doctors' recommendation of more conservative treatment (*i.e.*,

physical therapy, medication for weight loss, cortisone injections) was not a clear

and convincing reason to discredit his symptom testimony. Nevertheless, this error

ORDER - 18

is harmless because, as discussed *supra*, the ALJ provides additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle,* 533 F.3d at 1162-63; *Molina,* 674 F.3d at 1115.  Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in rejecting the opinion of Jeffrey Jameson, D.O., and Kim Chupurdia, Ph.D. in favor of the opinions of J.D. Fitterer, M.D., Mary Alto, M.D., and Jay Toews, Ed.D.[3]  ECF No. 19 at 13-19.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to*

---

[3] The ALJ also found the opinions of Eugene Kester, M.D. and Andrew Forsyth, Ph.D. persuasive, but Plaintiff does not address these opinions, nor the opinion of medical expert Jerry Seligman, M.D., except for summarizing the testimony of Dr. Seligman and mentioning his opinion in a brief footnote, and has therefore waived arguments concerning these opinions, as discussed *infra*.  *See* ECF No. 19 at 4, 16.

ORDER - 19

1    *Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

2    404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of

3    all medical opinions or prior administrative medical findings from medical sources.

4    20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of

5    medical opinions and prior administrative medical findings include supportability,

6    consistency, relationship with the claimant (including length of the treatment,

7    frequency of examinations, purpose of the treatment, extent of the treatment, and

8    the existence of an examination), specialization, and "other factors that tend to

9    support or contradict a medical opinion or prior administrative medical finding"

10   (including, but not limited to, "evidence showing a medical source has familiarity

11   with the other evidence in the claim or an understanding of our disability

12   program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-

13   (5).

14        Supportability and consistency are the most important factors, and therefore

15   the ALJ is required to explain how both factors were considered.  20 C.F.R. §

16   404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

17        (1) *Supportability.* The more relevant the objective medical evidence
          and supporting explanations presented by a medical source are to

18        support his or her medical opinion(s) or prior administrative medical
          finding(s), the more persuasive the medical opinions or prior

19        administrative medical finding(s) will be.

20        (2) *Consistency.* The more consistent a medical opinion(s) or prior
          administrative medical finding(s) is with the evidence from other

ORDER - 20

1    medical sources and nonmedical sources in the claim, the more
2    persuasive the medical opinion(s) or prior administrative medical
      finding(s) will be.

3    20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how

4    the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when

5    two or more medical opinions or prior administrative findings "about the same

6    issue are both equally well-supported ... and consistent with the record ... but are

7    not exactly the same," the ALJ is required to explain how "the other most

8    persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

9    § 404.1520c(b)(3).

10        The parties disagree over whether Ninth Circuit case law continues to be

11   controlling in light of the amended regulations, specifically whether the "clear and

12   convincing" and "specific and legitimate" standards still apply.  ECF No. 19 at 13-

13   14; ECF No. 20 at 9-11.  "It remains to be seen whether the new regulations will

14   meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's

15   reasoning and whether the Ninth Circuit will continue to require that an ALJ

16   provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

17   of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No.

18   EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

19   2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

20   (W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer

ORDER - 21

to the new regulations, even where they conflict with prior judicial precedent,
unless the prior judicial construction 'follows from the unambiguous terms of the
statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL
3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet
Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d
Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld
unless 'they exceeded the Secretary's authority [or] are arbitrary and
capricious.'").

There is not a consensus among the district courts as to whether the "clear
and convincing" and "specific and legitimate" standards continue to apply.  *See,
e.g., Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.
Nov. 10, 2020) (applying the specific and legitimate standard under the new
regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.
Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,
2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new
regulations displace the treating physician rule and the new regulations control);
*Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.
Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and
legitimate nor clear and convincing standard).  For the sake of consistency in this
District, the Court adopts the rationale and holding articulated on the issue in

ORDER - 22

*Emilie K. v. Saul*, No. 2:20-cv-00079-SMJ, 2021 WL 864869, *3-4 (E.D. Wash. Mar. 8, 2021), *appeal docketed*, No. 21-35360 (9th Cir. May 10, 2021).  In *Emilie K.*, this Court held that the ALJ did not err in applying the new regulations over Ninth Circuit precedent, because the result did not contravene the Administrative Procedure Act's requirement that decisions include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record."  *Id.* at *4 (citing 5 U.S.C. § 557(c)(A)).  This rationale has been adopted in other cases with this Court.  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL 4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the Court's analysis in this matter would differ in any significant respect under the specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

     1.  *Dr. Jamison*

     In December 2019, Dr. Jamison completed a physical residual functional capacity statement and rendered an opinion of Plaintiff's level of functioning.  Tr. 547-50.  Dr. Jamison reported Plaintiff's diagnoses were hypertension, severe hypogonadism, morbid obesity, lower extremity edema, GERD with esophagitis, intermittent asthma, generalized anxiety, major depression, bilateral degenerative joint disease of the knees, and bilateral (right greater than left) wrist tendonitis.  Tr. 547.  He opined Plaintiff's prognosis was poor.  *Id.*  He reported Plaintiff's most

ORDER - 23

1  significant clinical findings were chronic anxiety with debilitating depression due

2  to lost mobility and ability to work; he reported Plaintiff's impairments, symptoms

3  and limitations have lasted since 2015 "continuously" and that depression, anxiety,

4  and a somatoform disorder affect his physical conditions and/or contribute to the

5  severity of his symptoms and physical limitations.  *Id.*

6        Dr. Jamison opined Plaintiff's pain is frequently severe enough to interfere

7  with the attention and concentration needed to perform simple work tasks, and that

8  his experience of stress is constantly severe enough to interfere with the attention

9  and concentration needed to perform simple work tasks.  *Id.*  He estimated Plaintiff

10  could not walk a city block without rest or pain, he could not walk a city block on

11  rough or uneven ground, he could not climb steps without use of a handrail at a

12  reasonable pace, and he had problems with balance when ambulating.  Tr. 548.  He

13  opined Plaintiff must lie down or recline about four hours in an eight hour workday

14  due to fatigue, pain, and stress; he can sit a total of about three hours and stand a

15  total of less than an hour in an eight hour workday; he would require unscheduled

16  breaks every hour for fifteen to thirty minutes before returning to work; he should

17  elevate his legs above heart level four hours during an eight hour day; and he must

18  use a cane or wheelchair while engaging in occasional standing or walking.  Tr.

19  548-49.

20

ORDER - 24

He opined Plaintiff could occasionally and rarely (both are checked) lift ten pounds but should never lift more than 15 pounds; he could frequently lift five pounds; he could occasionally carry less than five pounds, rarely carry five pounds and should never carry 10 pounds or more; he could use his right hand, arm, and fingers one percent of the time in an eight hour day for grasping, turning, fine manipulation, and reaching including overhead; he could use his left hand, arm, and fingers five percent of the time. Tr. 549. Dr. Jamison further opined Plaintiff should not push or pull arm or leg controls; he could never climb ladders, ropes, or scaffolds, and should rarely climb stairs and ramps. Tr. 550. He opined "memory lapses, obesity" would also affect Plaintiff's ability to work at a regular job; and that due to physical and/or mental limitations he would be off task more than 30 percent in an eight hour workday and would likely be absent from work five days or more; he would be less than 50 percent as efficient as an average worker; and he would be unable to obtain and retain work in a competitive work environment eight hours a day five days a week. *Id.* The ALJ found Dr. Jamison's opinion unpersuasive. Tr. 25.

The ALJ found that Dr. Jamison's assessment was extreme and unsupported by Plaintiff's record and limited treatment. *Id.* Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. § 404.1520c(b)(2). The more relevant objective

ORDER - 25

1  evidence and supporting explanations that support a medical opinion, the more

2  persuasive the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).  Here, Dr.

3  Jamison indicated he based his opinion on Plaintiff's "history and medical file,

4  progress and office notes, physical examinations, psychological evaluations and his

5  personal observation of this patient."  Tr. 550.  However, as discussed *supra*, aside

6  from morbid obesity, the ALJ reasonably found Plaintiff's clinical examinations

7  were generally unremarkable, and records showed other impairments were

8  generally controlled by treatment.

9       A physician's opinion may also be rejected if it is unsupported by the

10  physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

11  2003).  Here, there is no indication in the medical record, including Dr. Jamison's

12  treatment notes, that Plaintiff should elevate his legs for hours a day or that he

13  required a cane, wheelchair, or any assistive device.  *See, e.g.*, Tr. 277, 293.  In

14  April 2018, for example, Dr. Jamison reported Plaintiff was doing better, was

15  going to start physical therapy in the water due to his knees, and that he had been

16  losing weight on medication.  Tr. 474.  At a psychological evaluation in October

17  2018, the examiner noted Plaintiff did not use any assistive devices, that he

18  reported walking in the woods helped his anxiety, and he reported he did not

19  require any assistance with self-care such as showering.  Tr. 509-11.  In September

20  2018, Plaintiff reported his left knee felt good with hardly any pain, although his

ORDER - 26

1    right knee continued to bother him; upon physical exam no edema was noted.  Tr.

2    515-16.  In March 2018, Dr. Jamison noted Plaintiff was working with

3    endocrinology to lose weight; he recommended bariatric surgery, noting that "if he

4    were able to lose weight, he could return to work, and he could probably change

5    some of the endocrine disorders." Tr. 472.  Although Dr. Jamison indicated

6    Plaintiff had limitations in both arms on the December 2019 form, records show

7    only one report of right wrist pain for two days in July 2019; Dr. Jamison noted

8    some tenderness on exam at that time and recommended a wrist brace, and there is

9    no evidence of follow up treatment for this issue.  Tr. 573.

10        Dr. Jamison's notes from the office visit where he completed Plaintiff's

11    disability form in December 2019 also show a generally normal physical exam,

12    with mild/moderate distress noted due to anxiety, right wrist tenderness and pain,

13    and normal upper and lower extremity strength. Tr.  577.  Dr. Jamison's treatment

14    notes indicate Plaintiff was having difficulty with symptoms of anxiety, right knee

15    pain, hypertension, and in terms of obesity that he was "not really stable, however

16    not really able to help more than we are"; he did not, however, describe need for an

17    assistive device, that Plaintiff was suffering from debilitating depression, or

18    suggest the limitations he indicated on the disability form.  Tr. 575-76.  The ALJ

19    reasonably concluded that Dr. Jamison's 2019 opinion was not supported by or

20    consistent with the medical record.

Even if this evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch*, 400 F.3d at 679. As lack of support in the medical record was a clear and convincing reason to give less weight to Plaintiff's subjective symptoms complaints, *supra*, therefore the ALJ's finding that Dr. Jamison's December 2019 medical opinion is unsupported for the same reason is also supported by substantial evidence.

The ALJ also found the opinions of Dr. Fitterer and Dr. Alto more persuasive than Dr. Jamison's opinion. Tr. 21, 23. In November 2018, Dr. Fitterer reviewed Plaintiff's records and opined that due to "morbid obesity, BMI 54+, hypogonadism, R knee, [and] severe OSA [obstructive sleep apnea]," Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, and stand and walk about six hours in an eight hour day and sit about six hours in an eight hour day; he should never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs; he could frequently balance, occasionally, stoop, kneel, and crouch but should never crawl; he should avoid concentrated exposure to fumes, odors, dusts, poor ventilation, and he should avoid even moderate exposure to hazards. Tr. 74-75, 90-91. Dr. Fitterer noted Plaintiff's "severe obesity [was] considered" and that "Plaintiff has some knee problems although not totally defined [sic] is still ambulating without assistive device," and

ORDER - 28

1  explained "he has no muscle weakness or neurological findings and in spite of his

2  obesity can still function at a light level for work."  Tr. 75.

3       In February 2019, Dr. Alto reviewed Plaintiff's records and affirmed Dr.

4  Fitterer's assessment, explaining that Dr. Fitterer's opinion was "consistent and

5  supported by evidence," and adding that Plaintiff "has dependent edema [bilateral

6  lower extremities].  He has [history of atrial fibrillation] possibly related to

7  drinking energy drinks.  300 pound weight gain in 5 years.  Knee pain but normal

8  MRI right knee. OSA."  Tr. 91.  The ALJ found these opinions persuasive.  Tr. 21,

9  23.

10      The ALJ found the November 2018 opinion of Dr. Fitterer and the February

11  2019 opinion of Dr. Alto persuasive because "there has been no evidence obtained

12  since that would alter or significantly modify them, and they continue to be

13  consistent with the [Plaintiff's] unremarkable examinations."  Tr. 21.  Plaintiff

14  argues that the ALJ erred by adopting the opinions of Dr. Fitterer and Dr. Alto

15  "based upon the incorrect assertion that there are no subsequent records which

16  contradict their findings," because they did not review "treatment records from

17  Kaiser-Permanente up to December 2019."  ECF No. 19 at 15-16.  However, each

18  record Plaintiff points to in support of his argument is a duplicate of Columbia

19  Medical Associates records found elsewhere in the administrative record, which

20  Dr. Fitterer and Dr. Alto had the opportunity to review.  *See* ECF No. 19 at 15-16

ORDER - 29

(citing Tr. 622, 625 (May 2017 office visit with Columbia Medical Associates, duplicate of Tr. 293, 296); Tr. 642, 644 (August 2017 office visit with Columbia Medical Associates, duplicate of Tr. 308, 310); Tr. 634 (February 2018, office visit with Columbia Medical Associates, duplicate of Tr. 300); Tr. 627, 629-30 (August 2018 office visit with Columbia Medical Associates, duplicate at Tr. 499-503)). Plaintiff's is not entitled to remand on this basis.

While Plaintiff argues that the reviewing doctors did not have the opportunity to review Dr. Jamison's December 2019 disability form, ECF No. 19 at 15, as explained *supra* substantial evidence supports the ALJ's finding that Dr. Jamison's opinion was not supported by or consistent with the longitudinal medical record, and Plaintiff is also not entitled to remand on this basis.

*2. Dr. Chupurdia*

In October 2018, Dr. Chupurdia conducted a psychological evaluation and rendered an opinion of Plaintiff's level of functioning. Tr. 509-12. Dr. Chupurdia diagnosed Plaintiff with general anxiety disorder and panic disorder with agoraphobia. Tr. 512. Dr. Chupurdia opined Plaintiff's prognosis "is fair" but that "psychological symptoms appear to be considerably impacting his daily living activities and level of functioning at this point." Tr. 512. She opined his "ability to interact with coworkers and the public is likely moderately impaired" and that due to his anxiety and tendency to isolate himself from others, his ability to

1   maintain attendance in the workplace is moderately impaired." *Id.* She further

2   opined his ability to complete a normal workday or workweek without interruption

3   from mood symptoms is likely moderately impaired; and "his ability to deal with

4   the usual stress encountered in the workplace is moderately impaired if it involves

5   being around other individuals." *Id.* The ALJ found Dr. Chupurdia's opinion

6   somewhat persuasive. Tr. 24.

7       First, the ALJ noted that while Dr. Chupurdia's opinion "was based on an in-

8   person examination and was the only mental health evaluation of record," it was

9   only somewhat persuasive because it was "essentially based only on the claimant's

10  subjective reports." Supportability is one of the most important factors an ALJ

11  must consider when determining how persuasive a medical opinion is. 20 C.F.R. §

12  404.1520c(b)(2). The more relevant objective evidence and supporting

13  explanations that support a medical opinion, the more persuasive the medical

14  opinion is. 20 C.F.R. § 404.1520c(c)(1). Here, while Dr. Chupurdia indicated she

15  had reviewed two of Dr. Jamison's treatment notes, she also noted that "unless

16  otherwise stated, all historical information in this evaluation is based on

17  [Plaintiff's] statements during the evaluation." Tr. 509. The ALJ noted Plaintiff's

18  reports to Dr. Chupurdia that his anxiety had worsened with his mother's death the

19  month before, but that it had previously been under control with medication, which

20  is consistent with the record, as discussed *supra*. Tr. 21. Dr. Chupurdia also

ORDER - 31

1   indicated generally normal findings upon mental status exam, and opined Plaintiff

2   had "clear ability to reason and understand" and "adaption skills." Tr. 512. She

3   observed his remote memory, recent memory, and immediate memory were within

4   normal limits, and that "sustained concentration and persistence are adequate based

5   on the brief concentration tasks of this evaluation." *Id.* An ALJ is not obliged to

6   credit medical opinions that are unsupported by the medical source's own data

7   and/or contradicted by the opinions of other examining medical sources.

8   *Tommasetti*, 533 F.3d at 1041. Based on generally normal mental status findings

9   and the record as a whole, the ALJ reasonably found Dr. Chupurdia's opinion

10  regarding Plaintiff's limitations was "essentially based only on the claimant's

11  subjective reports."

12          Next, the ALJ found that Dr. Chupurdia's "indications [Plaintiff was]

13  'moderately impaired' are vague and undefined for the specifics of assessing a

14  functional mental capacity." Tr. 24. As discussed in relation to Dr. Jamison *supra*,

15  a medical opinion may be rejected by the ALJ if it is conclusory or inadequately

16  supported. Here, Dr. Chupurdia did not specify what she meant by moderate or

17  otherwise explain the limitations, and the ALJ reasonably concluded Dr.

18  Chupurdia's opinion was vague and undefined.

19          The ALJ also found the psychological expert testimony of Dr. Toews more

20  persuasive than Dr. Chupurdia's opinion. Tr. 23-24. At the hearing, Dr. Toews

ORDER - 32

summarized Plaintiff's medical health record in regard to mental health.  Tr. 40-44.
He included a summary of Dr. Chupurdia's evaluation, noting her findings of
moderate limitations in dealing with the public and coworkers, completing the
work-week, dealing with work stress, and being around other people.  Tr. 41-42.
He testified that Plaintiff was diagnosed with anxiety but did well on medication,
including clonazepam and venlafaxine, throughout the record.  Tr. 39-40.  He
noted that Plaintiff had a temporary worsening of his anxiety due to grief and
bereavement, and that he stopped exercising and going to counseling around that
time.  Tr. 40-41.  Dr. Toews opined that based on his review of the records,
Plaintiff's primary difficulty was social anxiety disorder.  Tr. 42.  He opined
Plaintiff had no cognitive limitation, and otherwise had moderate limitations; he
explained Plaintiff could likely carry out simple and moderately complex tasks and
maintain concentration and persistence on such tasks for two hour intervals
between scheduled breaks; he should not work at a fast paced production rate of
pace, and he could work in a predictable environment with "seldom change," and
only superficial contact with the public.  Tr. 42-44.

The ALJ found Dr. Toews testimony persuasive because it was consistent
with the Plaintiff's record and he referenced specific exhibits in supporting his
opinion, and because Dr. Toews is familiar with the Social Security disability
criteria and had Plaintiff's entire record for review.  Tr. 24.  Consistency and

supportability are the most important factors an ALJ must consider when

determining how persuasive a medical opinion is.  20 C.F.R. § 404.1520c(b)(2).

The more consistent an opinion is with the evidence from other sources, the more

persuasive the opinion is.  20 C.F.R. § 404.1520c(c)(2).  The more relevant

objective evidence and supporting explanations that support a medical opinion, the

more persuasive the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).  Here, the

ALJ noted Dr. Toews had the opportunity to review the record as a whole and he

provided a summary of the record at the hearing along with his opinion, which he

supported by citation to the record.  Tr. 24.  While Plaintiff argues Dr. Toews

should not be given more weight than Dr. Chupurdia, as explained *supra*, the ALJ

reasonably concluded Dr. Chupurdia based her opinion on Plaintiff's subjective

reports.

Moreover, an ALJ may consider a medical provider's familiarity with

"disability programs and their evidentiary requirements" when evaluating a

medical opinion.  *Orn v. Astrue*, 495 F.3d 625, 631.  The extent to which a medical

source is "familiar with the other information in [the claimant's] case record" is

also relevant in assessing the weight of that source's medical opinion.  *See* 20

C.F.R. § 404.1527(c).  Here, Dr. Toews reviewed the record in its entirety, and the

ALJ was able to question Dr. Toews to clarify the psychological expert's responses

and opinion at the hearing, including Dr. Toews assessment of moderate

limitations, which he was not able to do with Dr. Chupurdia. Tr. 24; *see* Tr. 42-44.

Dr. Chupurdia indicated she reviewed only two of Dr. Jamison's treatment records.

Tr. 509.  While the record is not clear as to Dr. Chupurdia's familiarity with Social

Security's requirements, any error would be harmless as the ALJ gave other

reasons to reject the opinion.  *See Molina,* 674 F.3d at 1115.  The ALJ reasonably

found Dr. Chupurdia's opinion only somewhat persuasive based on her mental

status findings and the record as a whole, including the testimony of Dr. Toews,

and the ALJ's conclusions are supported by substantial evidence.

### 3. Other opinions

There are other medical opinions in the record, including the opinions of Dr.

Kester and Dr. Forsyth, and the medical expert testimony of Dr. Seligman.  Tr. 23.

While Plaintiff mentions Dr. Seligman in his summary of hearing testimony and in

a footnote when discussing medical opinion evidence, he does not address the

opinions of Dr. Kester and Dr. Forsyth.  *See* ECF No. 19 at 4, 16.  The court

ordinarily will not consider matters on appeal that are not specifically and

distinctly argued in an appellant's opening brief.  *See Carmickle v. Comm'r of Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  Rather, the Court will

"review only issues which are argued specifically and distinctly."  *Independent*

*Towers*, 350 F.3d at 929.  When a claim of error is not argued and explained, the

argument is waived.  *See id.* at 929-30 (holding that party's argument was waived

because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.,* 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding an allegation of error was "too undeveloped to be capable of assessment"). As Plaintiff failed to specifically and distinctly argue any claim of error concerning the opinion of Dr. Seligman, and did not discuss the reviewing psychologists, Plaintiff has waived any arguments concerning these medical opinions, and the Court declines to address them.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 15, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 36